UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------
GEORGE DEJESUS,

                     Petitioner,

     -against-

UNITED STATES OF AMERICA,

                     Respondent.
------------------------------------------

14cv2366

06cr12

OPINION & ORDER

WILLIAM H. PAULEY III, District Judge:

        Petitioner George DeJesus moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. He alleges that he is entitled to a resentencing in light of Alleyne v. United States, 133 S. Ct. 2151 (2013), and asserts claims of ineffective assistance by his trial and appellate counsel. For the reasons stated below, DeJesus's habeas petition is denied.

## BACKGROUND

        In June 2006, a superseding indictment charged DeJesus with: (1) conspiracy to distribute and possess with intent to distribute heroin; and (2) carrying and brandishing a firearm in furtherance of a drug trafficking crime. (Superseding Indictment, ECF No. 20.) The Government also filed a prior felony information, memorializing an earlier conviction for attempted criminal sale of a controlled substance. (Prior Felony Information, ECF No. 8.)

        At trial, this Court instructed the jurors that they must determine the amount of heroin involved in the conspiracy and that their determination must be "unanimous and beyond a reasonable doubt." (Trial Tr. at 602–03.) The jury convicted DeJesus on both counts and found that his participation in the conspiracy "involved more than one kilogram of heroin." (Trial Tr. at 672.) The Guidelines range for DeJesus's narcotics conspiracy conviction was 360 months to

life, followed by a mandatory consecutive 60-month term sentence on the firearms charge. (Presentence Investigation Report ("PSR"), ¶ 66.) The prior felony information enhanced the sentencing penalties by requiring a mandatory minimum term of twenty years imprisonment for the narcotics conspiracy. (PSR, ¶ 64.)

At sentencing, this Court determined that a variance from a Guidelines sentence was warranted so that DeJesus would have some portion of his life to make a contribution to society on his release. (Sentencing Tr. at 24.) The Court sentenced DeJesus to a term of 300 months of imprisonment on the narcotics conspiracy followed by a 60 month consecutive sentence on the firearms charge. (Sentencing Tr. at 24–25.)

The Second Circuit affirmed DeJesus's conviction. United States v. DeJesus, 314 F. App'x 386 (2d Cir. 2009). This Court subsequently denied DeJesus's application for resentencing (Memorandum & Order, ECF No. 55), which the Second Circuit also affirmed. United States v. DeJesus, 509 F. App'x 12 (2d Cir. 2013). The United States Supreme Court denied DeJesus's petition for a writ of certiorari. DeJesus v. United States, 134 S. Ct. 361 (2013).

In March 2014, DeJesus filed this habeas application. (Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Motion to Vacate"), ECF No. 1.) DeJesus's claims can be divided into three categories: (1) resentencing is warranted under Alleyne; (2) trial counsel rendered ineffective assistance; and (3) appellate counsel rendered ineffective assistance.

After reviewing DeJesus's petition and the Government's response, this Court appointed counsel for DeJesus and ordered further briefing on: (1) the applicability of Alleyne;

2

and (2) DeJesus's claims of ineffective assistance. (Order, ECF No. 9.) In January 2017, this Court conducted an evidentiary hearing. (Hearing Transcript, ECF No. 85 ("Hearing Tr.").)

## LEGAL STANDARD

Under 28 U.S.C. § 2255, a federal prisoner may challenge a sentence "imposed in violation of the Constitution or laws of the United States." However, "[a] habeas action is not intended to substitute for a direct appeal." Fountain v. United States, 357 F.3d 250, 254 (2d Cir. 2004). Therefore, a claim not brought on direct appeal is barred from habeas relief unless the petitioner can show both cause for the default and actual prejudice, or demonstrate actual innocence. United States v. Thorn, 659 F.3d 227, 231 (2d Cir. 2011). Establishing cause requires showing "some objective factor external to the defense impeded counsel's efforts to comply" with applicable procedural rules. Murray v. Carrier, 477 U.S. 478, 488 (1986). Prejudice means the claimed error "resulted in substantial disadvantage, infecting the entire trial with error of constitutional dimensions." Gutierrez v. Smith, 702 F.3d 103, 112 (2d Cir. 2012) (internal citation omitted). To demonstrate actual innocence, a petitioner must show "factual innocence, not mere legal insufficiency, and demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Thorn, 659 F.3d at 233–34 (internal citation omitted).

Ineffective assistance of counsel is a basis for relief under § 2255. See Morales v. United States, 635 F.3d 39, 42–43 (2d Cir. 2011). To prevail on an ineffective assistance claim, a petitioner must show that: (1) his counsel's representation fell below an objective standard of reasonableness; and (2) prejudice resulted—i.e., there is a reasonable probability that, but for the deficient representation, the outcome of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687–88 (1984). With regard to the first prong, a reviewing court

3

"must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." United States v. Aguirre, 912 F.2d 555, 560 (2d Cir. 1990) (internal citation omitted).

## DISCUSSION

### A. The Alleyne Resentencing Claim

Alleyne stands for the proposition that any "fact that increases a sentencing floor . . . forms an essential ingredient of the offense" and therefore "must be submitted to the jury." 133 S. Ct. at 2161. DeJesus alleges that this Court improperly instructed the jury concerning its required findings as to drug quantity, as well as DeJesus's mens rea with respect to that quantity. (Motion to Vacate at 13.) He argues that after Alleyne, a jury must find these elements beyond a reasonable doubt.

In its initial brief, the Government maintained that Alleyne did not apply retroactively to DeJesus. See United States v. Redd, 735 F.3d 88, 92 (2d Cir. 2013). But DeJesus's writ of certiorari was pending before the Supreme Court when Alleyne was decided. As a result, DeJesus's conviction was not final at that time, and DeJesus may bring his Alleyne claim. See Clay v. United States, 537 U.S. 522, 527 (2003) ("Finality attaches when [the Supreme Court] affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari."); United States v. Jackson, 41 F. Supp. 3d 156, 163 (N.D.N.Y. 2014) (Alleyne applies to cases pending on direct review or not yet final as of the date it was decided).

Turning to the merits, DeJesus was charged with conspiracy to distribute or possess with intent to distribute heroin in an amount equal to or exceeding one kilogram under 21 U.S.C. § 841(b)(1)(A). It was therefore necessary for the jury to determine the amount of heroin involved in DeJesus's conspiracy. Because DeJesus was charged as a co-conspirator, an

additional mens rea element of knowledge or foreseeability of that quantity was also required. See United States v. Adams, 448 F.3d 492, 499 (2d Cir. 2006).

However, DeJesus's argument is procedurally defaulted. DeJesus did not raise this claim on his direct appeal. Although Alleyne was decided while DeJesus's writ of certiorari was pending, the principle announced by the Supreme Court in Alleyne was already the law in the Second Circuit for convictions under § 841(b)(1)(A). In United States v. Gonzalez, the Second Circuit explained that the "quantity provisions of § 841 [count] as 'elements' that have to be pleaded and proved to a jury or admitted by the defendant to support conviction on an aggravated drug offense under that statute." 420 F.3d 111, 115 (2d Cir. 2005). Similarly, in United States v. Adams, the Second Circuit held that convictions under § 841(b)(1)(A) "requir[e] that a jury find, or the defendant himself admit to, the drug-quantity element" and "proof that this drug type and quantity were at least reasonably foreseeable to the co-conspirator defendant." 448 F.3d 492, 499 (2d Cir. 2006); see also United States v. Santos, 541 F.3d 63, 70–71 (2d Cir. 2008) (citing Adams for the same proposition).

In United States v. Andino (a case after DeJesus's conviction), the Second Circuit noted a clear consensus that cases under § 841(b)(1)(A) with a co-conspirator defendant (like DeJesus) "required proof that drug type and quantity were reasonably foreseeable [when] the defendan[t] did not directly and personally participate in the underlying drug transaction." 627 F.3d 41, 47 n.3 (2d Cir. 2010) (collecting cases).

Therefore, Alleyne did not change the Second Circuit's standard. It bears repeating that eight years earlier, Gonzalez stated that "drug quantities specified in 21 U.S.C. § 841 are elements that must be pleaded and proved to a jury." 420 F.3d at 133–34 (emphasis added). And DeJesus acknowledges that Adams reiterated a Second Circuit rule "that . . .

5

parallels (and pre-dates) Alleyne." (Reply Brief in Support of Defendant-Movant George DeJesus's Petition ("Reply Brief"), ECF No. 34, at 2.) Although DeJesus argues that this rule "was far from clear at the time of [his] trial" (Reply Brief at 2), the relevant question for procedural default is not "whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was 'available' at all." Smith v. Murray, 477 U.S. 527, 537 (1986).

Because the Second Circuit decided this question before DeJesus's conviction, any argument concerning the jury instructions could have been brought on direct appeal. And, in any event, to the extent DeJesus takes issue that this Court did not specifically refer to the jury's determination of drug quantity as an "element," Alleyne did not hold that judges must use that particular word—it held only that factors increasing a sentencing penalty must be found by a jury beyond a reasonable doubt and set out in the charging instrument. This was done in DeJesus's trial.

Because DeJesus has not demonstrated cause for failing to raise this argument on his direct appeal, this Court need not proceed further. Thorn, 659 F.3d at 233. The only way DeJesus could overcome this procedural hurdle is through establishing actual innocence. To establish actual innocence, a petitioner "must demonstrate that in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Bousley v. United States, 523 U.S. 614, 623 (1998) (internal citation omitted). DeJesus's trial record provides ample evidence that DeJesus was not actually innocent. The evidence demonstrated that he led a substantial heroin trafficking conspiracy, directly oversaw the daily operations of his organization, supplied dealers with heroin, and collected profits. Cooperating witnesses described DeJesus's hands-on daily management of this operation. (See, e.g., Trial Tr. at 113–

17; 149–52; 397–98; 404–06.) Accordingly, there is no basis to conclude that it is remotely likely, let alone more likely than not, that a reasonable juror would not have convicted DeJesus.

**B. The Ineffective Assistance Claims**

*1. Failure to Communicate and Advise on the Government's Plea Offer*

In October 2015, more than a year after filing his habeas petition, DeJesus asserted a new claim: that his trial counsel never informed him that the Government had offered a plea deal of five years of imprisonment. The evidentiary hearing in January 2017 focused on this contention.

A defendant is entitled to the effective assistance of counsel in connection with plea negotiations. See Lafler v. Cooper, 566 U.S. 156, 162 (2012). Defense counsel therefore "must communicate to the defendant terms of [ ] plea offer[s] . . . and should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed." Purdy v. United States, 208 F.3d 41, 45 (2d Cir. 2000); see also Padilla v. Kentucky, 559 U.S. 356, 364 (2010) ("Before deciding whether to plead guilty, a defendant is entitled to the effective assistance of competent counsel.") (internal citation omitted). An attorney's failure to communicate a plea offer can constitute constitutionally deficient performance. See Cullen v. United States, 194 F.3d 401, 404 (2d Cir. 1999).

At the hearing, DeJesus and DeJesus's trial counsel testified to their respective recollections of the events leading up to trial. Both recalled a plea offer, but disagreed on the information that was conveyed to DeJesus. DeJesus testified that counsel told him the Government's offer was "10 years." (Hearing Tr. at 12.) He did not recall ever being told about a five-year plea offer. (Hearing Tr. at 12.) Further, DeJesus did not recall ever learning from his

7

attorney what his Guidelines calculation would be if convicted, or about the mandatory minimum sentence that he faced if convicted. (Hearing Tr. at 12–15.) DeJesus testified that his trial counsel only advised him that he "had a good chance of winning" and "never advised [him] to take [a] plea." (Hearing Tr. at 18.) Not surprisingly, DeJesus also testified that he would have taken the Government's offer of five years had he known of it and of his sentencing exposure if convicted at trial. (Hearing Tr. at 16; 18–19.)

DeJesus's trial counsel testified that he remembered communicating the five-year plea offer, advising DeJesus to accept it, and that DeJesus refused. (Hearing Tr. at 43–45, 48, 52.) Trial counsel did not have notes regarding any plea conversations, but also testified that he typically does not keep such notes. (Hearing Tr. at 58–59.) DeJesus's counsel knew he conveyed the Government's offer because "he remember[ed] that the Court allowed DeJesus to have a conversation in court with his family members about whether DeJesus should accept the offer." (Hearing Tr. at 44.) He also recalled explaining to DeJesus that the prior felony information would mandate a 20-year statutory minimum if he was convicted of the narcotics conspiracy. (Hearing Tr. at 45.) DeJesus's trial counsel reiterated that he advised DeJesus to take the plea, but that DeJesus wanted to go to trial. (Hearing Tr. at 45, 71–72.)

DeJesus's trial counsel, an attorney for over 32 years and a member of the CJA panel, testified that he handles about 30 criminal cases per year (Hearing Tr. at 41–42.) He described his standard practice of reviewing with clients the potential sentence they face and their respective Guidelines calculations. (Hearing Tr. at 46–47.)

DeJesus's claim that his trial counsel failed to inform him of the Government's offer or advise him whether to accept it is undermined by other evidence. First, DeJesus executed a sworn affidavit following his conviction in which he stated "I went to trial against my

8

current counsel's advice in my current federal case even though I was offered a plea that would have considerably lowered my sentence." (January 23rd Hearing, Government Exhibit ("GX") 2, Ex. A, ¶ 6.) DeJesus now claims that he never read that affidavit. However, it is only two pages in length and the sentence quoted above is a few lines from DeJesus's signature. Similarly, DeJesus's testimony that his trial counsel never informed him about how much prison time he faced at sentencing is at odds with his statement in 2015 that his counsel explained all this to him. (See GX 4, ¶ 10.)

Moreover, DeJesus's delay in advancing this claim also casts doubt on its veracity. DeJesus never raised this claim during trial, or when he requested new counsel after trial, or on appeal. His claim only surfaced seven years after his conviction, and the claim about a failure to convey the five-year offer only cropped up another year after that.

Conversely, DeJesus's trial counsel testified credibly to conveying the five-year offer and advising DeJesus to take it. He recalled warning DeJesus that the evidence against him was overwhelming and that DeJesus would probably lose at trial. (Hearing Tr. at 45.) He further testified to specific details about DeJesus's case that make the five-year plea offer stand out in his memory. (Hearing Tr. at 44–45.) In fact, he continues to use DeJesus's refusal to accept the Government's offer as a cautionary tale to other clients. (Hearing Tr. at 51.)

DeJesus draws this Court's attention to Mickens v. United States, where the habeas petitioner's counsel was "unable to recall any plea offer being extended to his client," and only generally asserted that he conveys such offers. 2005 WL 2038589, at *3–4 (E.D.N.Y. Aug. 17, 2005). There, the court concluded that his "vague testimony" bolstered the petitioner's assertion that he was never informed of a plea offer. Mickens, 2005 WL 2038589, at *4. Here, conversely, DeJesus's counsel specifically recalled conveying the offer to DeJesus, and provided

9

details of the event. (Hearing Tr. at 44.) ("I know I made the offer to him. The reason I remember that is because. . . .").) Given DeJesus's delay in bringing this claim, as well as his previous contradictions of it, DeJesus has not established that his version of events are more trustworthy than his trial counsel's.

DeJesus also claims that even if his trial counsel informed him of the five-year plea offer, he still failed to provide effective assistance by failing to advise him to accept it. DeJesus asserts that he deserved "hours upon hours of discussion and counseling about the benefits of choosing a plea offer." (Post-Hearing Memorandum of Law in Support of Defendant-Movant, ECF No. 49, at 26.) That is not the standard. Ineffective assistance claims ask "whether defense counsel's actions were objectively reasonable." Purdy, 208 F.3d at 44. To determine reasonableness, courts look to "[p]revailing norms of practice as reflected in the American Bar Association Standards." Strickland, 466 U.S. at 688. The Model Rules of Professional Conduct provide that "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." MRPC Rule 1.4(b).

DeJesus's trial counsel conveyed the Government's plea offer, explained that DeJesus would likely lose at trial, and discussed the repercussions. (Hearing Tr. at 44–46.) DeJesus fails to demonstrate that such conduct on the part of his trial counsel does not qualify as legal representation within the bounds of objective reasonableness, nor that "hours upon hours" of discussion were in fact necessary.

2. *All Other Ineffective Assistance Claims*

DeJesus brings additional ineffective assistance claims against both his trial counsel and appellate counsel. Concerning trial counsel, DeJesus alleges that he: (1) failed to

follow up with an undercover officer who investigated DeJesus's case; and (2) failed to object to a communication between the Court and jury. DeJesus faults his appellate counsel for not objecting to the admission of DeJesus's prior heroin conviction under Rule 404(b).

First, DeJesus argues that his counsel's failure to investigate an undercover agent "resulted in a lost opportunity for a crucial missing witness instruction." (Motion to Vacate at 8.) "A missing witness charge invites the jury to draw an adverse inference against a party that fails to call a witness whose production is peculiarly within its power." United States v. Gaskin, 364 F.3d 438, 463 (2d Cir. 2004) (internal citations omitted). However, courts have considerable discretion in granting missing witness charges and are reluctant to do so "when it appears that the defense has no real interest in calling the witness to the stand, but merely is engaging in a form of gamesmanship in an effort to obtain a missing witness charge." United States v. Torres, 845 F.2d 1165, 1170 (2d Cir. 1988).

Here, both the Government and DeJesus's trial counsel knew that the undercover agent was available for trial, but each made the tactical decision not to call him. (Trial Tr. at 497–98.) Because the undercover was available to both parties, a missing witness instruction would not have been appropriate. Additionally, DeJesus's trial counsel made extensive argument during his closing on the Government's failure to call this agent. (Trial Tr. at 546, 550–51.) This undermines DeJesus's argument that he was prejudiced by the lack of a missing witness instruction. See United States v. Mittelstaedt, 31 F.3d 1208, 1215 (2d Cir. 1994). Finally, DeJesus fails to provide any indication of how interviewing the undercover would have helped DeJesus's case. He therefore fails to establish ineffective assistance for this claim. See United States v. Luciano, 158 F.3d 655, 660 (2d Cir. 1998) ("The decision not to call a particular witness is typically a question of trial strategy. . . .").

11

DeJesus next contends that his trial counsel should have objected to this Court's communication to the jury, through a courtroom deputy, regarding a spectator in the courtroom. (Motion to Vacate at 9.) "[A]n ex parte communication by a judge to a jury in response to a jury inquiry may be considered harmless error where the communication cannot be said to have prejudiced the defendant." United States v. Mejia, 356 F.3d 470, 475 (2d Cir. 2004). DeJesus fails to explain how this Court's deputy's innocuous communication had any effect on the trial or how it prejudiced DeJesus. DeJesus therefore cannot demonstrate that his trial counsel acted unreasonably by not objecting to it.

Finally, DeJesus faults his appellate counsel for not challenging the admission of his 1999 sale of heroin to an undercover officer. (Motion to Vacate at 6.) This evidence was admitted under Federal Rule of Evidence 404(b) for the limited purpose of establishing DeJesus's knowledge and intent with respect to heroin sales. (Trial Tr. at 389–92; 472–73; 505; 610.)

"A district court's decision to admit evidence of prior bad acts is reviewed for abuse of discretion, which [the Court of Appeals] will find only if the [district] judge acted in an arbitrary and irrational manner." United States v. Lombardozzi, 491 F.3d 61, 78–79 (2d Cir. 2007). Rule 404 allows evidence of a prior crime, wrong, or other act be admitted for certain specified purposes including "intent" and "knowledge." Fed. R. Evid. 404(b)(2); see also United States v. Zackson, 12 F.3d 1178, 1182 (2d Cir. 1993) ("Where a defendant claims that his conduct has an innocent explanation, prior act evidence is generally admissible to prove that the defendant acted with the state of mind necessary to commit the offense charged.").

Knowledge and intent were disputed issues at DeJesus's trial—defense counsel argued that DeJesus was merely present at the place where narcotics sales were conducted.

12

(Trial Tr. at 25.) Evidence of DeJesus's prior narcotics sales were relevant to rebut those suggestions. See Teague, 93 F.3d at 84 (prior cocaine sales were properly admitted as proof of defendant's intent to possess cocaine). Further, this Court gave a limiting instruction to the jury that this evidence could not be considered for the purpose of establishing DeJesus's character or any propensity to commit the crime. (Trial Tr. at 610.)

## CONCLUSION

For the foregoing reasons, George DeJesus's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 is denied. This Court grants a certificate of appealability on DeJesus's Alleyne claim. On all other claims, DeJesus has not made a substantial showing of the denial of a constitutional right, and therefore a certificate of appealability will not be issued. See 28 U.S.C. § 2253(c). This Court further certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order, other than on the Alleyne claim, would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438 (1962). The Clerk of Court is directed to terminate all pending motions and mark this case as closed.

Dated: December 11, 2017
New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.